UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEVIN WALTER DENNIS,

                                Plaintiff,        **6:16-cv-6750-MAT**

                                                                      **DECISION AND ORDER**

               -vs-

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                                Defendant.

---

**I.    INTRODUCTION**

Represented by counsel, Kevin Walter Dennis ("Plaintiff") has brought this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security[1] ("Defendant" or "the Commissioner") denying his application for disability insurance benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

## II. PROCEDURAL BACKGROUND

On September 4, 2013, Plaintiff filed a Title II application for DIB, alleging disability beginning November 9, 2012, due to panic and anxiety attacks, generalized anxiety disorder, major depressive disorder, bipolar disorder, and obsessive compulsive disorder. Plaintiff's claim was denied initially and he timely requested a hearing, which was held via videoconference before administrative law judge ("ALJ") Rosanne Dummer on April 21, 2015. On May 19, 2015, the ALJ issued an unfavorable decision. (T. 11-33).[2] Plaintiff's request for review was denied by the Appeals Council on September 23, 2016, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

## III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2016. (T. 16). The ALJ also found that Plaintiff had not engaged in substantial gainful activity since November 9, 2012, the alleged onset date. (*Id.*).

---

[2] Citations to "T." in parentheses refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

At step two, the ALJ determined that Plaintiff had the severe impairments of depressive disorder, obsessive-compulsive personality disorder, and anxiety disorder, and the non-severe impairments of diabetes mellitus, hyperlipidemia, hypertension, and obesity. (T. 16).

At step three, the ALJ considered Plaintiff's impairments and found that, singly or in combination, they do not meet or medically equal the severity of a listed impairment. (T. 17). In particular, the ALJ considered Listings 12.04, 12.06, and 12.07. (*Id.*).

Prior to proceeding to step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 404.1567(c), with the following additional limitations: can lift and carry 50 pounds occasionally and 25 pounds frequently; can sit about six of eight hours and stand or walk about six of eight hours; is able to tolerate brief and superficial contact with others; can tolerate brief and superficial contact on an occasional basis with the public; can sustain attention for extended periods of two-hour segments in an eight-hour day; can understand, remember, and carry out instructions for the performance of semi-skilled and unskilled work; is able to adapt to changes as needed for semi-skilled and unskilled work. (T. 17).

At step four, the ALJ determined that Plaintiff was capable of performing his past relevant work as an insurance clerk. (T. 27). In the alternative, at step five, the ALJ relied on a vocational expert's testimony to find that there are other jobs that exist in significant numbers in the national economy and state-wide that Plaintiff can perform, including cost accounting clerk, mortgage accounting clerk, and data entry clerk. (*Id.*). The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. (T. 28).

**IV. DISCUSSION**

  **A. SCOPE OF REVIEW**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's

conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

In this case, Plaintiff argues that remand is required because (1) the ALJ violated the treating physician rule in failing to accord controlling weight to the opinion of treating psychiatrist Dr. Faiz Khan; (2) the opinion of non-examining psychiatrist E. Kamin, to which the ALJ afforded "great weight," was stale, based on incomplete evidence, and impermissibly vague, and therefore cannot provide substantial evidence for the ALJ's conclusions; and (3) the ALJ failed to properly evaluate Plaintiff's credibility. For the reasons set forth below, the Court finds these arguments without merit.

    **B.    The ALJ did not Violate the Treating Physician Rule**

        **1.    Factual Background**

Plaintiff attended an initial psychiatric examination with his treating psychiatrist, Dr. Khan, on March 20, 2013, reporting anxious thoughts and 12-hours of sleep per day. (T. 407-08). Plaintiff was dressed normally, exhibited normal memory, carried on a conversation appropriately, and was of average intelligence. (*Id.*). Dr. Khan performed a mental status examination, which was fully normal. (*Id.* at 408). Dr. Khan assessed Plaintiff with depressive disorder, not otherwise specified, and with a rule-out diagnosis of bipolar disorder. (*Id.*). Plaintiff had a global assessment of functioning ("GAF") score of 54. (*Id.*). Dr. Khan

continued Plaintiff's existing prescription for Paxil, and added a prescription for Wellbutrin. (*Id*.).

Dr. Khan saw Plaintiff again on May 16, 2013, and again Plaintiff had a fully normal mental status examination. (T. 410). Dr. Khan discontinued Plaintiff's Wellbutrin prescription and prescribed Pristiq, Seroquel, and Lamictal. (*Id*.).

Plaintiff treated with Dr. Khan on July 18, 2013. (T. 412-13). Plaintiff was friendly and cooperative, and again had a fully normal mental status examination. (*Id*.). Dr. Khan observed that there was "no evidence of memory defect." (T. 412). Plaintiff admitted that he had ceased taking his medications because he felt they were making him "too sedated and tired. (*Id*.). Dr. Khan advised Plaintiff that he should try taking at least Lamictal and that he needed to take it for at least two months. (T. 413).

Plaintiff was seen by Dr. Khan on September 19, 2013, and had yet another fully normal mental status examination with no defects noted in short or long term memory. (T. 529). Dr. Khan noted that although Plaintiff claimed to be taking his medication, Dr. Khan doubted the truthfulness of that statement, because Plaintiff still had refills left on his Pristiq and Seroquel prescriptions. (*Id*.).

Plaintiff had additional follow-up appointments with Dr. Khan on December 4, 2013, February 13, 2014, and April 17, 2014. (T. 531-33, 535). At all of these appointments, Plaintiff's mental status examination was normal. (*Id*.).

At a visit with Dr. Khan on July 10, 2014, Plaintiff was poorly dressed, but demonstrated appropriate conversational skills and had a fully normal mental status examination. (T. 538-39). Dr. Khan increased Plaintiff's Lamictal dosage, continued Plaintiff on Zoloft, and added a prescription for Latuda. (T. 538). Dr. Khan saw Plaintiff again on September 11, 2014, and noted that Plaintiff seemed to have improved since his Lamictal was increased. (T. 540). Plaintiff was cooperative and friendly and did not appear depressed or anxious. (T. 541). He reported taking his dog for walks and his mental status examination was fully normal. (*Id.*).

Plaintiff had a follow-up appointment with Dr. Khan on December 17, 2014. (T. 542-43). Plaintiff was friendly and cooperative and reported that he had lost 60 pounds through diet changes and daily walks with his dog. (T. 543). Plaintiff's mental status examination was fully normal and he was continued on the same medications. (*Id.*).

On April 6, 2015, Dr. Khan completed a mental residual functioning questionnaire related to Plaintiff. (T. 493). The questionnaire was a "check-the-box" form without narrative elaboration. Dr. Khan opined that Plaintiff: had unlimited or very good ability to maintain regular attendance and be punctual within customary, usually strict, tolerances and to sustain an ordinary routine without special supervision; limited but satisfactory

ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; was seriously limited in, but not precluded from, working in coordination with or proximity to others without being unduly distracted, accepting instructions and responding appropriately to criticism from supervisors, and dealing with normal work stress; and was unable to meet competitive standards in maintaining attention for two-hour segments and completing a normal workday or workweek without interruptions from psychologically based symptoms. (*Id.*).

In her decision, the ALJ afforded "little weight" to Dr. Khan's opinion. (T. 26). She explained that the opinion was unsupported by Dr. Khan's treatment records and notes, which showed that Plaintiff routinely had normal mental status examinations, including intact attention, concentration, and memory, and that his coping skills were sufficient to help him attend to activities of daily living. (*Id.*). She further explained that Plaintiff had been given only conservative treatment, which was inconsistent with the severe limitations set forth in Dr. Khan's opinion, and that it appeared Dr. Khan may have been overly sympathetic to Plaintiff due to his financial concerns. (*Id.*).

2. **Analysis**

Plaintiff contends that the ALJ's treatment of Dr. Khan's opinion was a violation of the treating physician rule. In particular, Plaintiff argues that the ALJ failed to give "good

reasons" for giving Dr. Khan's opinion less than controlling weight. The Court disagrees.

Under the Commissioner's Regulations in effect at the time of the ALJ's decision, a treating physician's opinion is generally entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" in determining how much weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117,

129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6).

In this case, the Court finds that the ALJ adequately explained her reasons for affording little weight to Dr. Khan's opinion. The Commissioner's Regulations specifically contemplate that when a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques[,]" 20 C.F.R. § 1527(d)(2), an ALJ is not bound to give it "controlling," *id.*, weight. In this case, the ALJ correctly noted that Dr. Khan's opinion that Plaintiff had severe deficits in his ability to maintain attention for two-hour segments was wholly inconsistent with the many mental status examinations he performed on Plaintiff that showed intact attention and concentration. An ALJ may properly afford less than controlling weight to an treating source's opinion when it is inconsistent with his own treatment notes and records. *See, e.g., Lamond v. Astrue*, 440 F. App'x 17, 20 (2d Cir. 2011).

The ALJ also correctly noted that Dr. Khan's treatment of Plaintiff was conservative. Contrary to Plaintiff's specious argument that, aside from medication and talk therapy, the only other treatments for mental health disorders are drastic steps such as "a frontal lobotomy or electroconvulsive therapy," mental health practitioners have many treatment techniques available to them, including cognitive behavioral therapy, inpatient treatment, and

eye movement desensitization and reprocessing ("EMDR").[3] Moreover, over the relevant time period, Dr. Khan noted that Plaintiff's condition had improved. While an ALJ may not "discount[]" a treating physician's opinion "merely because he has recommended a conservative treatment regimen," *Burgess*, 537 F.3d at 129, a conservative course of treatment "may, however, help to support the Commissioner's conclusion that the claimant is not disabled if that fact is accompanied by other substantial evidence in the record." *Id*. As such, it was not error for the ALJ to observe that Plaintiff's treatment had been conservative.

Plaintiff argues that the ALJ's statement that Plaintiff's coping skills were sufficient to allow him to attend to his activities of daily living and to socialize is "a gross mischaracterization of the treatment notes in [the] record." Docket No. 8-1 at 22. However, the ALJ was referring to a treatment note from Licensed Master Social Worker ("LMSW") Shirley Wright, one of Plaintiff's providers, that specifically states that "[Plaintiff's] coping skills have been sufficient to help him be able to attend to ADLs [activities of daily living] and to socialize to some extent." (T. 433). Far from being a

---

[3]

In fact, LMSW Wright attempted to provide Plaintiff with EMDR, but Plaintiff engaged in "blocking" and, at his next session, admitted to LMSW Wright that he was looking for "an easy fix." (T. 536-37.).

mischaracterization, the ALJ's statement was in fact an accurate paraphrase of LMSW Wright's observations.

The Court also finds that there is record support for the ALJ's observation that Dr. Khan appeared to be sympathetic to Plaintiff's financial condition. Dr. Khan recorded concerns about Plaintiff's financial condition in multiple treatment notes, noting that, if Plaintiff did not receive disability payments, he would have to access his pension fund, and would be taxed at almost 50%. (T. 538, 541). An ALJ may properly reject a treating physician's opinion if it "appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected." *Adams v. Colvin*, No. 6:14-CV-1540, 2016 WL 3566859, at *4 (N.D.N.Y. June 24, 2016) (internal quotation omitted). In this case, it was reasonable for the ALJ to conclude that Dr. Khan's multiple observations that Plaintiff would be injured financially in the event he were denied disability were indicative of sympathy for Plaintiff, especially where Dr. Khan's clinical observations of Plaintiff were generally unremarkable.

Finally, it is noteworthy that the form completed by Dr. Khan was a "check the box" form with no accompanying narrative explanation. Courts in this Circuit have consistently held that "lack of supporting detail and/or objective findings provides a ... reason for affording [an] opinion less weight." *Wright v. Colvin*, 2013 WL 3777187, at *15 (N.D.N.Y. July 17, 2013) (citing 20 C.F.R.

§§ 404.1527(d)(3), 416.927(d)(3)) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *see also Halloran*, 362 F.3d at 31 n.2 (describing standardized form checklist as "only marginally useful for purposes of creating a meaningful and reviewable factual record"); *Llorens-Feliciano v. Astrue*, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012) ("'Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).

For all the reasons discussed above, the Court concludes that the ALJ did not err in affording little weight to Dr. Khan's opinion. Accordingly, Plaintiff has not shown that remand is warranted on this basis.

**C. Substantial Evidence Supports the ALJ's Findings**

Plaintiff's next argument is that the ALJ's determination is not supported by substantial evidence. In particular, Plaintiff argues that Dr. Kamin's opinion, which was based on his review of Plaintiff's medical records, was stale, based on incomplete information, and improperly vague, and thus did not constitute substantial evidence in support of the ALJ's determination. The Court finds these arguments without merit.

"Non-examining medical consultants . . . may provide opinions, which constitute substantial evidence." *Byrne v. Berryhill*, 2018 WL 317842, at *6 (E.D.N.Y. Jan. 5, 2018); *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (noting that the Commissioner's Regulations "permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record"). In this case, Dr. Kamin's opinion was well-supported by the evidence of record, which showed that Plaintiff's mental status examinations were routinely normal, he was capable of socializing (and, in fact, was consistently encouraged by his mental health providers to increase his social activity), and he was capable of attending to his activities of daily living.

It is true that "a medical opinion that would otherwise constitute substantial evidence may be rendered stale or invalid because it is based upon an incomplete record or fails to account for a deterioration in a claimant's impairment." *Miller v. Colvin*, 2016 WL 4478690, at *12 (W.D.N.Y. Aug. 25, 2016). However, in this case, there is nothing in the record to support the conclusion that Plaintiff's condition deteriorated after Dr. Kamin issued his opinion, nor has Plaintiff shown that any of the documents that were added to the record after Dr. Kamin completed his review rendered the conclusions therein invalid. To the contrary, if anything, the record shows that Plaintiff's condition actually

*improved* after October 23, 2013, when Dr. Kamin's opinion was issued. Indeed, on September 11, 2014, Dr. Khan observed that increasing Plaintiff's Lamictal dosage had resulted in improvements to his condition and that Plaintiff "at this time is not depressed [or] anxious." (T. 544).

The Court further finds that, contrary to Plaintiff's argument, the use of the term "moderately limited" does not render Dr. Kamin's opinion impermissibly vague. *See, e.g., O'Bara v. Colvin*, 2017 WL 2618096, at *2 (W.D.N.Y. June 16, 2017). Here, Dr. Kamin provided a narrative explanation of his RFC determination and ultimately concluded that Plaintiff retained the ability to perform "unskilled to semi-skilled work." (T. 73, 76). Under these circumstances, the Court is not persuaded that Dr. Kamin's opinion was unduly vague, or that the ALJ erred in relying upon it.

The Court further notes that Dr. Kamin's opinion was not the only evidence the ALJ relied upon in determining Plaintiff's RFC. The ALJ also gave some weight to the opinion of consultative psychological examiner Dr. Sara Long. Dr. Long examined Plaintiff on October 16, 2013, and opined that Plaintiff had no limitations for work involving simple direction or simple tasks, or for maintaining attention, concentration, or a regular schedule, and that he could learn new tasks, perform complex tasks, make appropriate decisions, and relate adequately with others.

(T. 484). Dr. Long's opinion also provides substantial evidence for the ALJ's RFC finding.

In sum, Plaintiff has failed to demonstrate that the ALJ's determination was unsupported by substantial evidence. While there may be evidence in the record that would have supported a contrary conclusion, "whether there is substantial evidence supporting [Plaintiff's] view is not the question here; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). For the reasons set forth above, the Court concludes that the substantial evidence standard is met in this case.

**D. The ALJ Properly Assessed Plaintiff's Credibility**

Plaintiff's final argument is that the ALJ failed to properly evaluate his credibility. Again, the Court disagrees.

"Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted). In this case, the ALJ found Plaintiff less than fully credible. She explained that Plaintiff's motivation to work seemed questionable, particularly in light of the fact that Plaintiff had

not undergone any job training or vocational rehabilitation. (T. 24). The ALJ further noted that Plaintiff had been somewhat non-compliant with recommended treatments (T. 24, 27) and that his testimony regarding his activities of daily living were inconsistent with the mental health notes of record (T. 24).

The ALJ's observation that Plaintiff's motivation to work was questionable is well-supported by the record. Plaintiff told LMSW Wright that he was upset by the suggestion that he should "do a little office job" and that he felt "demeaned and degraded" by the suggestion that he, who had once made $60,000 per year, should do a minimum wage job. (T. 531). Furthermore, and as the ALJ noted, after being fired from his long-time job at Blue Cross Blue Shield, Plaintiff did not seek any job training or vocational rehabilitation. An ALJ may properly take into account lack of motivation to work in assessing credibility. *See, e.g., Maurice v. Colvin,* 2014 WL 2967442, at *20 (S.D.N.Y. July 2, 2014), *report and recommendation adopted*, 2014 WL 5410004 (S.D.N.Y. Oct. 23, 2014).

Similarly, it was proper for the ALJ to consider plaintiff's failure to follow his providers' treatment recommendations in assessing his credibility. *See, e.g, Calabrese v. Astrue,* 358 F. App'x 274, 277–78 (2d Cir. 2009) (a plaintiff's failure to take medication as prescribed is an appropriate factor to consider in assessing credibility); *Nicholson v. Colvin*, 2015 WL 1643272, at *7 (N.D.N.Y. Apr. 13, 2015) ("The ALJ properly considered

Plaintiff's failure to comply with medication treatment as prescribed as a factor weighing against her credibility, particularly because she had continued counsel from her treatment providers to maintain the medication regimen."). The record in this case shows that Plaintiff stopped taking medication against his providers' recommendation, that he refused to attend group therapy when it was recommended to him, that he would not cooperate with LMSW Wrights' attempts to perform EMDR, and that, at one point, LMSW Wright considered either transferring Plaintiff to another therapist or discharging him entirely because he was unwilling to try the coping techniques and behavioral strategies she had suggested to him. The ALJ did not err in finding that these facts weighed against Plaintiff's credibility.

The ALJ also correctly noted that there were discrepancies between Plaintiff's hearing testimony and his reports to his providers. While Plaintiff told the ALJ that he was "virtually" unable to leave his mother's basement (T. 42), he reported to his mental health providers that he went on daily walks with his dog and performed yardwork, in addition to attending social and community events (such as birthday parties) with his mother. Inconsistent testimony is an appropriate factor for the ALJ to have considered in her credibility assessment.

Plaintiff contends that the ALJ failed to properly take into account his excellent for record (namely, that he worked for Blue Cross Blue Shield for 26 years prior to being terminated).

-18-

However, the ALJ expressly considered Plaintiff's work history, but ultimately determined that the other factors discussed above rendered him less than fully credible. (T. 26-27). "Although it is true that a 'long and honorable' work history supports a claimant's credibility . . ., the Court is aware of no case suggesting that such work history is conclusive as to credibility. Even a claimant with such a work history may be untruthful, and the ALJ is still entitled to make credibility determinations based on other evidence in the record, such as medical evidence." *Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 540 (S.D.N.Y. 2015) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)).

Plaintiff also argues that the ALJ's statement that she found "[Plaintiff's] credibility statements concerning the intensity, persistence, and limiting effects of these symptoms to be consistent with the limitations established in his residual functional capacity" is "nonsensical." Docket No. 8-1 at 28. The Court disagrees. While the statement in question is inartfully phrased, it is clear from context that the ALJ was stating that Plaintiff's *credible* statements regarding his symptoms (as opposed to his incredible statements) were consistent with her RFC findings. The use of an inartful phrase does not render the ALJ's credibility determination so flawed as to warrant remand.

"Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently

unreasonable." *Andrisani v. Colvin*, 2017 WL 2274239, at *3 (W.D.N.Y. May 24, 2017) (internal quotation omitted). In this case, the ALJ adequately explained the rationale for her credibility determination, and that rationale was reasonable in light of the record. Accordingly, remand is not warranted on this basis.

**V. Conclusion**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Docket No. 8) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 17) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____

HON. MICHAEL A. TELESCA
United States District Judge

Dated: January 19, 2018
Rochester, New York